UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHIVA STEIN, | : |
| Plaintiff, | : CIVIL ACTION NO. _____ |
| v. | : |
| AIR PRODUCTS AND CHEMICALS, INC., | : |
| Defendant. | : |

# COMPLAINT

Plaintiff, Shiva Stein, alleges, upon information and belief based upon, *inter alia*, the investigation made by and through her attorneys, except as to those allegations that pertain to the plaintiff herself, which are alleged upon knowledge, as follows:

## NATURE OF THE ACTION

1. This is a stockholder's direct action under Section 14(a) of the Securities Exchange Act of 1934, as amended (the Exchange Act), 15 U.S.C. § 78n(a), and the rules and regulations of the United States Securities and Exchange Commission (the "SEC").

2. Plaintiff, a shareholder of Defendant Air Products And Chemicals Inc. ("Air Products" or the "Company"), seeks an injunction to prevent a vote by its shareholders on Management Proposal 4 in the 2017 Proxy Statement for the annual meeting of Air Products shareholders scheduled for January 25, 2018 ("Proposal 4"). The grounds for this injunction are Defendant's failures to comply with the SEC's disclosure requirements for proxy statements.

3. Proposal 4 requests that the shareholders approve material terms of the Long-Term Incentive Plan (the "Plan") to allow a continued Company tax deduction for the value of certain plan awards under Section 162(m). But it is unclear how many participants are in the

Plan and why they are receiving these awards. SEC Rule 14a-3(a), 17 C.F.R. § 240.14a-3, requires that public companies may not solicit shareholder votes without furnishing a proxy statement "containing the information specified in Schedule 14A," 17 C.F.R. § 240.14a-101. Item 10(a)(1) of Schedule 14A specifically requires that "[i]f action is to be taken with respect to any plan pursuant to which cash or noncash compensation may be paid or distributed," the proxy statement soliciting this vote must "[d]escribe briefly the material features of the plan being acted upon, identify each class of persons who will be eligible to participate therein, indicate the approximate number of persons in each such class, and state the basis of such participation."

4. Proposal 4 of the 2017 Proxy Statement fails to disclose all of the classes of eligible participants because although non-employee directors are participants in the Plan, the proposal does not identify them as a class of participants. In addition, for those classes of participants that Proposal 4 does mention, it fails to include the approximate number of eligible participants and the bases of their participation in the Plan.

5. Moreover, Item 10(b)(2)(i) of Schedule 14A requires that

[w]ith respect to ... any plan containing options, warrants or rights submitted for security holder action, state:

(A) The title and amount of securities underlying such options, warrants or rights;

(B) The prices, expiration dates and other material conditions upon which the options, warrants or rights may be exercised;

(C) The consideration received or to be received by the registrant or subsidiary for the granting or extension of the options, warrants or rights;

(D) The market value of the securities underlying the options, warrants, or rights as of the latest practicable date; and

(E) In the case of options, the federal income tax consequences of the issuance and exercise of such options to the recipient and the registrant;

6. The Plan includes stock options, stock appreciation rights and a number of other

equity-based rights, but Proposal 4 fails to disclose any of the information required by Item 10(b)(2)(i).

7. Finally, the Table of Contents in the 2017 Proxy Statement mislabels Proposal 4 as an "Advisory Vote on Executive Compensation." Proposal 4 does not concern an "advisory" vote. The shareholder vote on the Plan is required by the Internal Revenue Code, and it will be binding on the Company.

8. Thus, the 2017 Proxy Statement does not comply with the SEC rules and regulations, and the Court should enjoin that vote unless and until Defendant furnishes its shareholders with a supplemental proxy statement with those specific disclosures.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the subject matter of this action pursuant to Section 27(a) of the Exchange Act, 15 U.S.C. § 78aa(a).

10. In connection with the acts, omissions, conduct and wrongs alleged herein, Defendant used the mails and the means or instrumentalities of interstate commerce.

11. Venue is proper in this district because, as allowed under Section 27(a) of the Exchange Act, this district is where the violation at issue in this case occurred because the Plaintiff is a resident of this district.

## PARTIES

12. Plaintiff is, and has been continuously since June 2014, a holder of Air Products common stock.

13. Air Products is a corporation organized under the laws of the State of Delaware. The Company's last fiscal year ended September 30, 2017. As of October 31, 2017, it had 218,618,346 shares of common stock outstanding. Air Products's common stock is traded on the

New York Stock Exchange under the symbol APD. Air Products is a world-leading Industrial Gases company that provides atmospheric and process gases and related equipment to manufacturing markets, including refining and petrochemical, metals, electronics, and food and beverage.

## WRONGFUL ACTS AND OMISSIONS

14. Air Products has scheduled the annual shareholders' meeting for January 25, 2018. On December 13, 2017, it furnished its shareholders with the 2017 Proxy Statement to solicit their proxies for four management proposals and to transact other business that may properly come before the annual meeting. On December 14, 2017, it furnished its shareholders with a revised 2017 Proxy Statement to correct a coding error in the 2017 Summary Compensation Table.

15. Proposal 4 requests that the shareholders approve the Plan, which Air Products will be able to use to grant incentive stock options or non-qualified stock options, stock appreciation rights, restricted stock, restricted stock units, performance awards or any combination of to participants in the Plan immediately after the stockholder vote. But this proposal fails to provide sufficient – and federally required – information for Air Products stockholders to understand who are the classes of participants in the plan, how many participants there are in each class, or why they are eligible for such shares. Proposal 4 also fails to provide the federally required information necessary to request stockholder action concerning a stock option plan.

16. Because Proposal 4 concerns a stockholder vote on a compensation plan, the SEC's rules and regulations require the 2017 Proxy Statement to disclose certain information concerning the Plan. Specifically, Item 10(a)(1) of Schedule 14A, 17 C.F.R. § 240.14a-101

states:

> Compensation Plans. If action is to be taken with respect to any plan pursuant to which cash or noncash compensation may be paid or distributed, furnish the following information:
>
> (a) Plans subject to security holder action.
>
> (1) Describe briefly the material features of the plan being acted upon, identify each class of persons who will be eligible to participate therein, indicate the approximate number of persons in each such class, and state the basis of such participation.

But the 2017 Proxy Statement omits these disclosures.

17. Instead of providing the "approximate number of persons in each such class, and … the basis of such participation," Proposal 4 fails to mention that non-employee directors are participants in the Plan. According to Sections 1 and 3 of the Plan itself, which is not part of the the 2017 Proxy Statement, but which is a hyperlinked exhibit to the Company's November 16, 2017 Form 10-K annual report, non-employee directors *are* participants in the Plan:

> 1. Purposes of the Plan
>
> The purposes of this Plan are: (i) to provide long-term incentives to those executives or other key employees who are either in a position to contribute to the long-term success and growth of Air Products and Chemicals, Inc. (the "Company") and Participating Subsidiaries, or who have high potential for assuming greater levels of responsibility or who have demonstrated their critical importance to the operation of their organizational unit; (ii) to assist the Company and Participating Subsidiaries in attracting and ***retaining nonemployee directors ("Eligible Directors")***,…
>
> \*\*\*
>
> 3. Eligibility for Participation
>
> ***Participation in the Plan shall be limited to (i) Eligible Directors*** and (ii) executives or other key employees (including officers and directors who are also employees) of the Company and its Participating Subsidiaries selected on the basis of such criteria as the Committee may determine. As used herein, the term "employee" shall mean any person employed full time or part time by the Company or a Participating Subsidiary on a salaried basis, and the term

5

"employment" shall mean full-time or part-time salaried employment by the Company or a Subsidiary.

(Emphasis added.)

18. Proposal 4 does not mention that nonemployee directors are eligible to participate in the Plan. Instead, under the heading "Employees Eligibility," Proposal 4 only explains the following regarding participation:

> The class of employees eligible for awards under the Plan is executives and other key salaried employees of the Company and its subsidiaries.

Proxy Statement at 7.

19. The above paragraph merely describes four classes of persons – (i) Company executives; (ii) Company key salaried employees; (iii) subsidiary executives; and (iv) subsidiary key salaried employees – but it does not explain how many persons are in each class, and it does not provide the bases of their participation.

20. Thus, Proposal 4 is inaccurate as to who is eligible and it is entirely unclear from the 2017 Proxy Statement how many participants will be awarded the compensation from the Plan that stockholders are being asked to approve or the basis of their receipt of such awards.

21. Moreover, Item 10(b)(2)(i) of Schedule 14A requires that

> [w]ith respect to … any plan containing options, warrants or rights submitted for security holder action, state:
>
> (A) The title and amount of securities underlying such options, warrants or rights;
>
> (B) The prices, expiration dates and other material conditions upon which the options, warrants or rights may be exercised;
>
> (C) The consideration received or to be received by the registrant or subsidiary for the granting or extension of the options, warrants or rights;

(D) The market value of the securities underlying the options, warrants, or rights as of the latest practicable date; and

(E) In the case of options, the federal income tax consequences of the issuance and exercise of such options to the recipient and the registrant;

22. Despite the fact that the Plan includes stock option compensation, as well as stock-appreciation rights and a number of other equity-based rights, Proposal 4 does not contain any of this information. To demonstrate, the entire proposal is reprinted below:

4. APPROVE MATERIAL TERMS OF LONG-TERM INCENTIVE PLAN

Under U.S. federal income tax law, compensation paid to certain Executive Officers may not be deductible unless it qualifies as "performance based". The Company delivers a significant portion of its Executive Officer compensation through performance shares, which entitle the recipients to receive shares of Company stock upon the satisfaction of certain performance goals and other conditions to earning the award. Performance shares, and certain other types of awards under the Plan which have not been recently used, are intended to provide compensation which will qualify as "performance-based compensation" exempt from restrictions on deductibility.

In order for compensation attributable to Plan awards to be exempt from the restrictions, the Company's shareholders must periodically approve the employees eligible for such compensation under the Plan, the maximum awards under the plan, and the business criteria on which performance goals under the Plan are based. Each of these terms is discussed below.

Maximum Awards – The Plan includes the following limits on the amounts of awards that may be granted to any one person in any one fiscal year:

• a 1,000,000 share limit on the number of shares that may be the subject of grants of stock options (and tandem stock appreciation rights);

• a 1,000,000 share limit on the number of shares that may be the subject of grants of stand-alone stock appreciation rights;

• a 100,000 share limit on the number of shares that may be distributable under deferred stock units, including performance shares;

• A 100,000 share limit on the number of shares of restricted stock that may be granted; and

• a 100,000 share limit with respect to which other stock awards may be granted

(i.e., the value of such awards cannot exceed the value of 100,000 shares).

These limits are subject to adjustment to reflect stock splits and similar events. The minimum price at which shares may be acquired by exercising options granted under the Plan, and on the basis of which stock appreciation rights may be valued, is the fair market value of a share of Company stock on the date the award is granted.

Employees Eligible- The class of employees eligible for awards under the Plan is executives and other key salaried employees of the Company and its subsidiaries.

Business Criteria – The performance objectives for performance shares or any other performance-based deferred stock units, restricted stock, or other stock awards will be limited to objective measures based on one or more of the following business criteria, any of which may be measured either in absolute terms or as compared to another company or companies and may be calculated in accordance with GAAP or otherwise as determined by the Board or a Committee thereof: return on shareholder's equity; earnings per share targets or growth; growth in net income; growth in revenues; cash flow return on capital or growth in cash flow; earnings before interest and taxes; earnings before interest, taxes, depreciation and amortization; total return to shareholders; return on capital employed; operating return on net or gross investment or other denominators based on investment or assets; profit margins; or operating margins. These criteria may be used individually or in a formula combining two or more criteria such as a sum or two or more criteria or the greatest of two or more criteria.

**The Board recommends a vote "For" approving the material terms of the Long-Term Incentive Plan.**

(Emphasis in original.)

23. As such, nowhere does Proposal 4 provide "[t]he title and amount of securities underlying [its] options, warrants or rights"; "[t]he prices, expiration dates and other material conditions upon which the options, warrants or rights may be exercised"; "[t]he consideration received or to be received by the registrant or subsidiary for the granting or extension of the options, warrants or rights"; "[t]he market value of the securities underlying the options, warrants, or rights as of the latest practicable date"; or "[i]n the case of options, the federal income tax consequences of the issuance and exercise of such options to the recipient and the registrant."

24. This contravention of the SEC rules renders the 2017 Proxy Statement unlawful under § 14(a) of the Exchange Act.

25. Finally, the Table of Contents in the 2017 Proxy Statement mislabels Proposal 4 as an "Advisory Vote on Executive Compensation." But Proposal 4 does not concern an "advisory" vote.

26. The shareholder vote on the Plan is required by the Internal Revenue Code § 162(m), and it will be binding on the Company. Indeed, Proposal 4 concedes this: "In order for compensation attributable to Plan awards to be exempt from the restrictions, ***the Company's shareholders must periodically approve*** the employees eligible for such compensation under the Plan, the maximum awards under the plan, and the business criteria on which performance goals under the Plan are based." (Emphasis added.)

27. This is because IRC § 162(m)(4)(C)(ii) requires that in order for performance-based executive compensation in excess of $1 million to be deductable, "the material terms under which the remuneration is to be paid, including the performance goals, [must be] disclosed to shareholders and approved by a majority of the vote in a separate shareholder vote before the payment of such remuneration[.]" The preceding paragraphs state a direct claim for relief against Air Products under § 14(a) of the Exchange Act for acting in contravention of the rules and regulations prescribed by the SEC.

28. As a result of these actions, plaintiff will be injured, and she has no adequate remedy at law. She will suffer irreparable harm if no action is taken to ameliorate this harm because, in addition to being forced to vote without this information, the Plan allows for an unknown number of shares to be granted to an unknown number of "executives and other key salaried employees" of Air Products and its "subsidiaries" immediately after this vote.

Unwinding these awards will be impossible.

29. To ameliorate the injury, injunctive relief is required in the form of an amended and supplemented proxy statement that provides the information required by Item 10(a)(1) and Item 10(b)(2)(i) of Schedule 14A with regard to Proposal 4. The Table of Contents must also be corrected regarding Proposal 4.

30. Consequently, Air Products should be enjoined from presenting Proposal 4 for a stockholder vote at the January 25, 2018 annual meeting or certifying or otherwise accepting any vote cast, by proxy or in person, by or on behalf of any Air Products shareholder in connection with Proposal 4 in the 2017 Proxy Statement.

## RELIEF REQUESTED

**WHEREFORE,** Plaintiff requests the following relief:

 A. A preliminary and permanent injunction, enjoining Air Products from:

  (i) certifying or otherwise accepting any vote cast, by proxy or in person, by or on behalf of any Air Products shareholder in connection with Proposal 4 in the 2017 Proxy Statement;

  (ii) presenting Proposal 4 for a shareholder vote at the January 25, 2018 annual meeting.

 B. A preliminary and permanent injunction requiring Air Products to furnish a supplemental proxy statement with the information required by 17 C.F.R. §240.14a-101, Items 10(a)(1) and 10(b)(2)(i) that is cured of material disclosure defects pursuant to 15 U.S.C. § 78n(a). The injunction must also required Air Products to correct the Table of Contents regarding Proposal 4.

 C. Awarding such other and further relief as this Court deems just and proper.

Dated: December 18, 2017

                              **BARRACK, RODOS & BACINE**

                              By: /s/  Arnold Gershon
                              A. Arnold Gershon
                              Michael A. Toomey
                              Eleven Times Square
                              640 8th Ave., 10th Floor
                              New York, NY 10036
                              Telephone: (212) 688-0782
                              Facsimile: (212) 688-0783

                              **WOLF HALDENSTEIN ADLER**
                              **FREEMAN & HERZ LLP**

                              Gloria Kui Melwani
                              270 Madison Avenue
                              New York, NY 10016
                              Telephone: (212) 545-4600
                              Facsimile: (212) 686-0114


                              *Attorneys for Plaintiff*